IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISTRICT COUNCIL 16 NORTHERN CALIFORNIA HEALTH AND WELFARE TRUST FUND, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CRETEGUARD, INC.,<br><br>　　　　Defendant. | No. C 10-00023 CRB<br><br>**ORDER GRANTING SUMMARY JUDGMENT** |

Defendant CreteGuard has been sued by Plaintiffs for failing to pay almost $1 million into an employee benefit plan, as required by a collective bargaining agreement (CBA) and the Employee Retirement Income Security Act (ERISA). The CBA required Defendant to pay a certain amount for each hour worked by certain categories of workers. Defendant failed to do so. Plaintiffs now move for summary judgment. For the foregoing reasons, this Court grants Plaintiffs' motion.

**I.    BACKGROUND**

On October 31, 2005, Defendant became a signatory to a CBA between District Council 16 and the Northern California Floor Covering Association. Stafford Decl., Ex. B. This agreement was limited geographically. Specifically, the agreement was limited to forty

Northern California counties.[1]  Stafford Decl., Ex. C-1.  However, the CBA did cover some work performed outside of those counties.  The CBA required that Defendant abide by the terms of the CBA if it brought workers from those Northern California counties to do work outside of those counties.[2]

An audit completed in November 2009 showed that Defendant had failed to contribute more than $1 million to the employee benefit plan as required by the CBA.  Dominguez Decl., Ex. A.  The audit was sent to Defendant, who failed to challenge any of the audit findings.  Dominguez Decl. ¶¶ 5-6.  Defendant also failed to pay the amount, despite being offered a payment schedule.  Stafford Decl. ¶ 14.  The audit was revised at the request of Plaintiffs' counsel to exclude non-union members who had done work for Defendant outside

---

[1] The relevant part of the CBA reads:
1. Territorial Jurisdiction
The territorial jurisdiction covered by this Agreement shall be comprised of the Northern California Counties of: Alameda, Alpine, Amador, Butte, Calaveras, Colusa, Contra Costa, El Dorado, Glenn, Lake, Lassen, Marin, Mariposa, Mendocino, Merced, Modoc, Monterey, Napa, Nevada, Placer, Plumas, Sacramento, San Benito, San Joaquin, San Mateo, Santa Clara, Santa Cruz, San Francisco, Siskiyou, Shasta, Sierra, Solano, Sonoma, Stanislaus, Sutter, Tehama, Trinity, Tuolumne, Yolo, and Yuba (with the exception of the Tahoe Basin).  Stafford Decl., Ex. C-1.

[2] The relevant part of the CBA reads:
2. Out-of-Area Work
The Employer party hereto shall, when engaged in work outside the geographic jurisdiction of the Union party to the Agreement, comply with all of the lawful clauses of the collective bargaining agreement in effect in said other geographic jurisdiction and executed by the Employers of the industry and the affiliated Local Unions in that jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits and procedure for settlement of grievances set forth therein; provided however, that as to employees employed by such Employer from within the geographic jurisdiction of the Union party to this Agreement and who are brought into an outside jurisdiction, such employee shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction, whichever are more favorable to such employees, and fringe benefit contributions on behalf of such employees shall be made solely to their home funds in accordance with their governing documents.  This provision is enforceable by the Local Union or District Council in whose jurisdiction the work is being performed, both through the procedure for settlement of grievances set forth in it's applicable collective bargaining agreement and through the courts, and is also enforceable by the Union party to this Agreement both through the procedure for settlement of grievances set forth in this Agreement and through the courts.  Stafford Decl., Ex. C-1.

2

1  of the Northern California counties specified in the CBA. Stafford Decl. ¶ 15 . The revised
2  audit concluded that Defendant had failed to pay $967,209.20 into the plan. Dominguez
3  Decl., Ex. B.

4      Plaintiffs then filed this lawsuit requesting the $967,209.20 that Defendant failed to
5  contribute to the plan, along with liquidated damages, interest, costs, and fees as delineated
6  in the table below:

| | |
|---|---|
| Missing Contributions | $967,209.20 |
| Liquidated Damages | $193,441.84 |
| Interest | $183,145.00 |
| Audit Testing Fees | $3,681.75 |
| Attorneys Fees | $12,853.00 |
| Costs of Suit | $612.59 |
| **Total** | **$1,360,943.38** |

Plaintiffs have now moved for summary judgment.

## II.   LEGAL STANDARD

Summary judgment is properly entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The movant bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The movant is not required to produce evidence negating the non-movant's claims. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990) ("[T]he purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues"). If the movant carries its burden, the burden shifts to the nonmoving party to establish facts beyond the pleadings showing there remains a triable

1  issue of disputed material fact so that summary judgment is not appropriate.  <u>Celotex</u>, 477
2  U.S. at 324; <u>Adickes</u>, 398 U.S. at 157.

3       To successfully rebut a properly supported summary judgment motion, the non-
4  moving party "must point to some facts in the record that demonstrate a genuine issue of
5  material fact and, with all reasonable inferences made in the [nonmoving party's] favor,
6  could convince a reasonable jury to find for [that party]."  <u>Reese v. Jefferson School Dist.</u>
7  <u>No. 14J</u>, 208 F.3d 736, 738 (9th Cir. 2000).  The non-moving party must "go beyond the
8  pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and
9  admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"
10 <u>Celotex</u>, 477 U.S. at 324 (<u>quoting</u> Fed. R. Civ. P. 56(e)). The opposing party may not rest on
11 conclusory allegations or mere assertions.  Rather, it must present significant probative
12 evidence of specific facts raising a material issue that "can be resolved only by a finder of
13 fact because [the issue] may reasonably be resolved in favor of either party."  <u>Anderson</u>, 477
14 U.S. at 249-50, 256.

15 **III.    DISCUSSION**

16      This case involves a simple matter of contract interpretation.  Plaintiffs argue that the
17 CBA requires Defendant to contribute money to the employee benefit plan for hours worked
18 by Northern California employees on jobs in Southern California.  Defendant argues that
19 only hours worked on jobs in Northern California require such contributions.  The revised
20 audit includes only workers who did work within the forty counties defined in the CBA or
21 those who came from the within the forty counties to do work outside of those forty counties.
22 Stafford Decl. ¶ 17.  Therefore, if the CBA is found to cover those workers, Defendant is
23 liable for the full amount requested by Plaintiffs.

24      ERISA requires that "[e]very employer who is obligated to make contributions to a
25 multiemployer plan under the terms of the plan or under the terms of a collectively bargained
26 agreement shall . . . make such contributions in accordance with the terms and conditions of
27 such plan or such agreement."  29 U.S.C. § 1145.  ERISA allows few defenses for violations
28 of § 1145.  For example, it does not allow defendants to assert usual contract defenses.

4

Southwest Admrs., Inc. v. Rozay's Transfer, 791 F.2d 769, 773 (9th Cir. 1986). "In recognition of the fact that millions of workers depend upon employee benefit trust funds for their retirement security, Congress and the courts have acted to simplify trust fund collection actions by restricting the availability of contract defenses, which make collection actions unnecessarily cumbersome and costly." Id. This makes the language of the agreement that much more important.

### 1. Language of CBA

Defendant claims the relevant language of the CBA is ambiguous.[3] Because of this supposed ambiguity, Defendant argues that the Court must explore the intent of the parties at the time they agreed to the CBA.[4] This argument is without merit because the CBA is clear. Northwest Admrs., Inc. v. B.V. & B.R., Inc., 813 F.2d 223, 225 (9th Cir. 1987) ("To ascertain the meaning of [a] collective bargaining agreement, . . . first examine its express written terms"). The relevant language reads: "employees employed . . . from within the geographical jurisdiction of the Union . . . who are brought into an outside jurisdiction" shall be entitled to receive the "fringe benefit contributions . . . to their home funds in accordance with their governing documents." Stafford Decl., Ex. C-1. The "geographical jurisdiction of the Union" obviously refers to the section of the CBA that defines the territorial jurisdiction of the agreement, which consists of forty Northern California counties. Id. An "outside jurisdiction" just as obviously means an area not within those forty counties. Defendant argues that the CBA "is ambiguous with regard to the scope of workers encompassed by the term 'from within the geographical jurisdiction of the Union.'" Opp. at 5. Defendant's argument on this point is unpersuasive, as it fails to show how such clear language is ambiguous. Therefore, Plaintiffs have shown that they are entitled to missing contributions.

---

[3] Defendant makes this argument in its briefs, but seemed to abandon this argument during the hearing on the Motion for Summary Judgment. During oral argument, Defendant's counsel said that Defendant entered into the CBA with a full understanding of what it meant and followed it. Defendant seemed to argue, however, that the conduct of the parties during the time that the contract was made is still somehow relevant. The law does not support this contention. See Northwest Admrs., Inc. v. B.V. & B.R., Inc., 813 F.2d 223, 225 (9th Cir. 1987).

[4] Defendant's brief recounts in detail how it came to be a signatory to the CBA. Because the agreement is clear on its face, this information is irrelevant.

5

### 2. Rate of Pay

Defendant next argues that, even if it did not pay into the benefit plan for some covered work, the wrong rate of pay was used to calculate the amount owed. Opp. at 7. The only evidence submitted by Defendant is the Declaration of Theodore Nucum, the chief financial officer of CreteGuard. Nucum declares that the audit used the rate for "Floor Covering, but that CreteGuard signed the [agreement on representations] that work was to be performed under the Floor Preparation Worker rate." Nucum Decl. ¶ 10. Nucum attaches a portion of the agreement that merely describes the duties of a Floor Preparation Worker and the rate of pay for such workers in relation to Journeyman Floor Covering Installers. Nucum Decl., Ex. A. This provision does not seem to limit the scope of work to be performed under the CBA. Nothing in the excerpt of the CBA presented by Defendant suggests in any way that the agreement was meant to be limited to Floor Preparation Workers. In fact, references to Floor Covering Workers indicate that they, too, were contemplated in the agreement. This exhibit does not present a dispute of material fact. Furthermore, any representations made outside of the agreement are of no importance without a showing that the CBA is ambiguous. See Northwest Admrs., Inc., 813 F.2d at 225. Defendant has failed to make that showing. Even making all reasonable inferences in favor of Defendant, this does not present a dispute of a material fact.

### 3. Excluding Some Employees

Defendant also argues that the auditor should not have included some employees in its calculations. Opp. at 3. "The audit included office, warehouse and sales personnel, not just installers." Nucum Decl. ¶ 11. In his declaration, Nucum lists five employees he asserts had jobs that were not covered by the CBA. Id. Nucum says Esteban Blanco, James Grant, Frank Manfredona, and Steve Nordquist all had jobs that did not involve floor installation. Id. Nucum also says that Eduardo Flores, Jr., only spent part of his time as an installer. Id.[5]

---

[5] Underpayments to the plan for Blanco totaled $29,293.98. Dominguez Decl., Ex. B. Underpayments to the plan for Grant totaled $2,631.54. Id. Underpayments to the plan for Manfredona totaled $839.37. Id. Underpayments to the plan for Nordquist totaled $23,869.02. Id. Underpayments to the plan for Flores totaled $43,185.62. Id. The total underpayments alleged for these employees

6

1  This statement in the Nucum Declaration is somewhat at odds with the information provided
2  to the auditor.  The auditor states that the records provided by Defendant showed that the five
3  employees at issue were doing "floor covering work" for the hours included in the audit.
4  Dominguez Decl. ¶ 4.  The statement by Nucum does not directly contradict this; it is
5  possible that warehouse workers and sales representatives could occasionally do floor
6  covering work – just as Flores, Jr., did.[6]

7  Under an ordinary summary judgment analysis, the Nucum Declaration might be
8  enough to establish a dispute of material fact, because Defendant is the non-moving party
9  and all inferences must be made in Defendant's favor.  However, ERISA requires every
10 employer to maintain records on its employees "sufficient to determine the benefits due or
11 which may become due to such employees." 29 U.S.C. § 1059(a)(1).  The Ninth Circuit has
12 held that "both the language and the legislative history of ERISA clearly require employers
13 to keep records of their employees' hours in order to permit the calculation of benefits due."
14 Brick Masons Pension Trust v. Indus. Fence & Supply, Inc., 839 F.2d 1333, 1338 (9th Cir.
15 1988).  Because of this requirement, the Ninth Circuit held that "once the trustees produce
16 evidence raising genuine questions about the accuracy of the employer's records and the
17 number of hours worked by the employees, the burden shifts to the employer to come
18 forward with evidence of the precise amount of work performed." Id.  Thus, if Plaintiffs can
19 show that (1) Defendant failed to keep adequate records, and (2) "there exist some employees
20 who (a) performed covered work that was (b) unreported to the trust funds, then the burden
21 shifts" to Defendant to show the "extent of the unreported covered work for those
22 employees." See Motion Picture Indus. Pension & Health Plans v. N.T. Audio Visual
23 Supply, Inc., 259 F.3d 1063, 1066 (9th Cir. 2001).

---

27 totals $99,819.53.  Without these employees, Plaintiffs allege underpayments of $867,389.67.

28  [6] This is especially true for workers like Manfredona, who worked just 48.24 hours of "floor preparation" work over three months, according to the audit report. See Dominguez Decl., Ex. B.

7

Based on the discrepancy between the audit and Nucum's statement that the employees perform work that is not covered by the CBA, there are only three possible conclusions.

The first possibility is that the audit is correct and Nucum is wrong. This would mean that Plaintiffs are entitled to the contributions because the work performed by these employees was covered by the CBA.

The second possibility is that the audit is wrong and Nucum is right. This would mean that the records kept by Defendant were inadequate under ERISA because they did not correctly identify the work being done, making it impossible to determine the amount that should have been contributed to the plan. If this were the case, the burden would be on Defendant to show the "extent of the unreported covered work for those employees." N.T. Audio, 259 F.3d at 1066. Defendant has not done that. The only evidence that could possibly meet this burden is the statement by Nucum that these are warehouse and sales employees. As is shown by dual-role of employee Flores, some of these employees apparently do both non-covered work and covered work. It would be Defendant's burden to establish how much covered and uncovered work these employees performed. Simply stating their job titles is insufficient to meet this burden.

The third possibility is that the audit is right and Nucum is right.[7] It is possible that these employees did flooring work while being employed as warehouse workers and sales representatives; the two are not mutually exclusive. If that is the case, the audit would have properly excluded their non-covered hours, and Defendant would be liable for the unpaid contributions.

However one examines it, Defendant is liable for these employee contributions. The fact that its own records listed the hours as "floor covering work" requires that Defendant either meet its burden of rebutting this possibly inaccurate record or pay the contributions required for this kind of work under the CBA. Defendant has done neither.

---

[7] Of course, both could be wrong. However, it is Defendant's burden to show the records it kept were adequate to determine the amount it needed to contribute to the plan. Unless it meets this burden, Plaintiff is entitled to summary judgment. See N.T. Audio, Inc., 259 F.3d at 1066.

Plaintiffs have presented evidence to support all of the needed facts to prove that Defendant is liable. First, Defendant was a signatory to the CBA. See Stafford Decl., Ex. B. This is not disputed by Defendant. Second, the CBA required that Defendant make payments into the employee benefit plan for work done outside of Northern California if that work was done by employees from Northern California. Stafford Decl., Ex. C-1. The audit excludes Southern California workers who performed work in Southern California, leaving only those covered by the CBA. Stafford Decl. ¶ 17. Plaintiffs have met their burden, and Defendant has failed to show any dispute of material fact. Therefore, this Court grants Plaintiffs' Motion for Summary Judgment as to all contributions.

### 4. Damages

Plaintiffs have established that Defendant is liable for $967,209.20 in missing payments to the employee benefit plan. That leaves liquidated damages, interest, audit testing fees, attorneys' fees, and costs. Under ERISA, these damages are "mandatory and not discretionary" if there is a judgment in favor of the plan. Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co., 746 F.2d 557, 569 (9th Cir. 1984) (holding that liquidated damages are mandatory); Operating Eng'rs Pension Trust v. Reed, 726 F.2d 513, 514 (9th Cir. Cal. 1984) (holding that interest and reasonable attorneys' fees are mandatory). If the plan is awarded a judgment, the statute provides that the plan "shall" be awarded the unpaid contributions, interest on those unpaid contributions, liquidated damages, reasonable attorneys' fees, and the costs of the action. 29 U.S.C. § 1132(g).

#### a. Liquidated Damages

The District Council 16 Northern California Health and Welfare Trust Fund Agreement, which is incorporated into the CBA, sets liquidated damages at 20 percent if Plaintiffs are forced to litigate any dispute over contributions to the benefit plan. Stafford Decl., Ex. G; see also 29 U.S.C. § 1132(g) (allowing liquidated damages up to 20 percent). Because Plaintiffs have shown that they are entitled to $967,209.20, they also are entitled to 20 percent of that in liquidated damages. Therefore, Plaintiffs are awarded $193,441.84 in liquidated damages.

9

### b. Auditing Fees and Costs

Under both the CBA and ERISA, Plaintiffs are entitled to costs. Stafford Decl., Ex. C-1; see 29 U.S.C. § 1132(g)(2) (mandating that the plan be awarded costs). The costs of bringing this action total $612.59, and include filing fees, personal service, legal research, and messenger service. Stafford Decl. ¶ 21. The audit fees totaled $3,681.75 and include "time spent for fieldwork and report preparation." Dominguez Decl. ¶ 10. This included 27 hours billed at $99 and $120 an hour for Paul Christianson and 11 hours billed at $79 an hour for Jason Chan. These auditors inspected documents and wrote the report. Id. Robert Ruehl, billed at $240 an hour, spent half-an-hour reviewing the draft report. Id. Dominguez also spent half an hour reviewing the auditors' work and was billed at $199 an hour. Id. These costs and auditing fees are awarded to Plaintiffs.

### c. Attorneys' Fees

Reasonable attorneys' fees are mandatory under ERISA when a plan wins a judgment for unpaid contributions. Reed, 726 F.2d at 514;  29 U.S.C. § 1132(g)(2). Plaintiffs request $12,853 in attorneys' fees. Stafford Decl. ¶ 20. The attorneys, their hours and their rates are set forth in the table below:

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Michele Stafford (partner) | $185/hour | 15.7 | $2,904.50 |
| Stafford | $200/hour | 27.4 | $5,480.00 |
| Muriel Kaplan (partner) | $195/hour | 1.3 | $253.50 |
| Kaplan | $205/hour | .90 | $184.50 |
| Blake Williams (associate) | $195/hour | 1.2 | $234.00 |
| Paralegals | $110/hour | 8.9 | $979.00 |
| Paralegals | $115/hour | 24.5 | $2,817.50 |
| Totals | | 79.9 | $12,853.00 |

Stafford Decl. ¶ 20.

While the issuing of attorneys' fees is mandatory, the amount is not. Reed, 726 F.2d at 514. The Court must only give "reasonable" attorneys' fees. 29 U.S.C. § 1132(g)(2). Reasonableness under 29 U.S.C. § 1132(g)(2) is determined using the lodestar method.

10

Masonry Indus. Trust Admin., Inc. v. Pro-Build, Inc., 2000 U.S. Dist. LEXIS 21152, at *3-*4 (D. Or. Dec. 12, 2000). Applying the lodestar method, the rates are imminently reasonable, as are the hours devoted to the lawsuit. Spending less than $13,000 on a case worth more than $1 million is a model of efficiency. Furthermore, Defendant stated at the hearing on this motion that the attorneys' fees were not in dispute. For these reasons, the Court grants Plaintiffs' request for attorneys' fees.

### d. Interest

Plaintiffs are entitled to interest on the delinquent payments as well. See Reed, 726 F.2d at 514. Plaintiffs are entitled to a rate of five percent per annum, an amount that will accrue until the contributions are paid. Stafford Decl. ¶ 7; see also Stafford Decl., Ex. G; Reed, 726 F.2d at 514. Therefore, Plaintiffs' request for interest is granted.

## IV. CONCLUSION

For the foregoing reasons, this Court GRANTS Plaintiffs' Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: March 21, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE